# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:07CV111-V

| | |
|---|---|
| **Dan Dill, Inc. d/b/a Ashley Furniture Homestore, William L. Hutson and Crystal A. Hutson,** ) ) ) ) **Plaintiffs,** ) ) **v.** ) ) **Ashley Furniture Industries, Inc. and Ashley Homestores, Ltd.,** ) ) ) **Defendants.** ) ) | **O R D E R** |

This matter is before the Court on Defendants' timely filed Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6), or in the alternative, Motion to Stay, Compel Arbitration pursuant to 9 U.S.C. § 3, and Transfer pursuant to 28 U.S.C. § 1404(a) (Doc. # 7); Plaintiffs' Response (Doc. # 12); and Defendant's Reply (Doc. # 15). Defendants' motions are now ripe for disposition.

## I. Factual and Procedural Background

On September 25, 2007, Plaintiffs filed their complaint and amended complaint in the Catawba County, NC, Superior Court. Plaintiffs allege anticipatory breach of contract, breach of contract, unfair and deceptive trade practices under North Carolina law, and motion for temporary restraining order and demand for preliminary injunction. *See* Complaint, Doc. # 1-2, P. 4-5. On October 4, 2007, the defendants successfully removed the lawsuit to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

1

On April 7, 2000, Plaintiff Dan Dill, Inc., a North Carolina corporation doing business as Ashley Furniture Homestore, via William L. Hutson (as President), and Crystal L. Hutson (as Secretary), entered into a license agreement ("License Agreement") with the Defendants Ashley Furniture Industries, Inc., and Ashley Homestores, Ltd., both of which are incorporated under the laws of Wisconsin. The License Agreement contained a forum selection clause, choice of law provision, and a mandatory arbitration provision among various other provisions concerning the operation of the business. *See* License Agreement, § 28, ¶¶ A & B; § 29, ¶ A. The facts surrounding the claims set forth in the complaint remain in dispute.

## II. Defendant's Motion to Dismiss for Improper Venue

### A. Standard of Review

Ordinarily, proper venue for actions filed in federal district courts is governed by 28 U.S.C. §1391. "[W]ith respect to cases removed to federal court from state court, however, venue is determined solely by the removal statute, 28 U.S.C. § 1441." Scholl v. Sagon RV Supercenter, LLC, 249 F.R.D. 230, 238 (W.D.N.C. 2008) (quoting Godfredson v. JBC Legal Group, P.C., 387 F.Supp.2d 543, 547 (E.D.N.C. 2005); Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953)). Thus, upon removal, venue becomes "the district court of the United States for the district and division embracing the place where such action is pending." Scholl, 249 F.R.D. at 238 (quoting Polizzi, 345 U.S. at 665); 28 U.S.C. § 1441(a).

### B. Analysis

Citing the Fourth Circuit's recent decision in Sucampo Pharm., Inc. v. Astellas Pharm., Inc., 471 F.3d 544, 550 (4th Cir. 2006), and Rule 12(b)(3), Defendants argue for dismissal for improper venue based upon the forum selection language in the License Agreement. In Sucampo, the court

2

held that if venue is disputed because of a forum selection clause in a license agreement then such a motion "should be properly treated as a motion to dismiss on the basis of improper venue." Sucampo, 471 F.3d at 548-550 (recognizing that other circuit courts have characterized such motions as motions under Rule 12(b)(1), (3), or (6) and discussing each as a procedural mechanism for venue challenges based upon forum selection clauses).[1] However, Sucampo was not a removal action and, therefore, does not control. "Because §1441(a) only allows one possible venue for removal, once a case is properly removed to federal court, a defendant cannot move to dismiss on §1391 venue grounds." Godfredson, 387 F.Supp.2d at 556 (quoting Hollis v. Fla. State Univ., 259 F.3d 1295, 1299 (11th Cir. 2001)); (citing Polizzi, 345 U.S. at 665).

Here, the Defendants removed this action from the Caldwell County, NC, Superior Court to this Court pursuant to §1441(a). As such, the Defendants are now precluded from moving to dismiss under § 1391. Thus, the Defendants' motion to dismiss for improper venue is denied.

### III. Defendants' Motion to Transfer Venue

#### A. Standard of Review

Title 28, United States Code, Section 1404(a), provides that "[F]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In Godfredson, the court in *dicta* commented that, "a defendant in a removed action, if it believes that the case can be better litigated or tried in another court, has the option of seeking transfer pursuant to 28 U.S.C. § 1404(a).

---

[1] Although Defendants labeled the filing as encompassing motions to dismiss under Rules 12(b)(1), 12(b)(3), and 12(b)(6), it seems Defendants were simply unsure about characterization of the motion. In any event, Defendants appear to have abandoned any Rule 12 argument based upon lack of subject matter jurisdiction or failure to state a claim because these arguments are not addressed in their memoranda.

Godfredson, 387 F.Supp.2d at 556.

A movant seeking transfer under § 1404(a) assumes a "heavy burden" in establishing that transfer is appropriate. Jim Crocket Promotions, Inc. v. Action Media Group, Inc., 751 F.Supp. 93, 95 (W.D.N.C. 1990). A court evaluating transfer may consider the following factors:

1. The plaintiff's initial choice of forum;
2. The residence of the parties;
3. The relative ease of access of proof;
4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
5. The possibility of a view;
6. The enforceability of a judgment, if obtained;
7. The relative advantages and obstacles to a fair trial;
8. Other practical problems that make a trial easy, expeditious, and inexpensive;
9. The administrative difficulties of court congestion;
10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and
11. The avoidance of unnecessary problems with conflict of laws.

Id. (citing Commercial Equip. Co. v. Barclay Furniture Co., 738 F.Supp.974, 977 (W.D.N.C. 1990); McDevitt & Street Co. v. Fid. & Deposit Co., 737 F.Supp. 351, 354 (W.D.N.C. 1990)). "The Court's analysis of these factors is both qualitative and quantitative. Scholl, 249 F.R.D. at 239. Moreover, if the defendant moves to transfer venue because of a forum-selection clause, "[s]uch clause shifts the burden from the party seeking transfer to the party opposing it." Id. (quoting Blue Mako, Inc. v. Minidis, 472 F.Supp.2d 690, 704 (M.D.N.C. 2007) (citing Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)). In light of the forum selection clause, Plaintiff bears the burden of demonstrating that venue in the Western District of North Carolina is superior to the Wisconsin venue Defendants prefer.

B.      **Ambiguity of the License Agreement**

The forum selection clause at issue is found within the arbitration section of the License Agreement. The pertinent sections of the License Agreement read as follows:

> The parties agree that any action brought by either party in any court, whether federal or state, **shall be brought within the Trempealeau County State of Wisconsin** and do hereby waive all questions of personal jurisdiction or venue for the purposes of carrying out this provision, **except any relationship laws or matters which shall be under the laws of the state in which the Licensed Business is located**.
>
> \*\*\*
>
> Except as specifically otherwise provided in this License Agreement, the parties agree that arbitration shall be the exclusive means of resolving any controversy, dispute, or question arising out of, in connection with, or in relation to this Agreement or its interpretation, application, enforcement, performance, or non-performance, or any breach hereof that cannot be amicably settled. The arbitration proceedings **shall be conducted in Trempealeau, Wisconsin,** in accordance with the then existing Chapter 788 on the Wisconsin Statutes (the Wisconsin Arbitration Act), and judgment upon any award, which may include an award of damages, may be entered thereon by the Trempealeau County Circuit Court.
>
> *See* Defs.' Exh. A / License Agreement, P. 31, ¶ ¶28, § B and 29, § A (emphasis added).

Plaintiffs contend that while their claims are within the scope of the License Agreement, the language of the License Agreement itself is ambiguous. Specifically, Plaintiffs allege the forum selection clause's language "except any relationship laws or matters which shall be under the laws of the state in which the Licensed Business is located," is unclear. Response, P. 6. Plaintiffs cite both North Carolina and Wisconsin cases construing contractual ambiguities against the drafter.[2] Plaintiffs argue that because one clause in the forum selection provision is ambiguous, the clause must be

---

[2] Novacare Orthotics & Prosthetics E. Inc. v. Speelman, 137 N.C. App. 471, 528 S.E.2d 918 (2000); Dieter v. Chrysler Corp., 234 Wis.2d 670, 610 N.W.2d 832 (2000).

5

construed against the Defendants who drafted the Lease Agreement. Doing so, according to Plaintiffs, would allow the Western District of North Carolina to be the proper venue.

Defendants argue the License Agreement's forum selection clause is enforceable notwithstanding any ambiguity. According to Defendants, Plaintiffs' interpretation is flawed because i) it would leave the forum selection clause meaningless, and ii) if another construction is proffered consistent with the entire clause then Plaintiffs' interpretation should not be applied. *See* Reply 6-7. In support, Defendants cite our circuit's holding in Essential Hous. Mgmt. v. Walker, 1998 WL 559349 (4th Cir. June 9, 1998) (unpublished) (citing Maddox v. Colonial Life & Acc. Ins. Co., 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981). Under Walker, if more than one interpretation of the two clauses is given and one interpretation "gives effect to both clauses," the reviewing court should not apply the construction nullifying the entire clause. Id., at *7; *see also* Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 614 (4th Cir. 2004) (Widener, J., concurring in part and dissenting in part).

The parties propose two different understandings of the License Agreement's disputed wording. Plaintiffs request this Court read into the aforementioned language the word 'contractual' before the word 'relationship'. Response, P. 6. Defendants interpret this language to mean there would be laws in the forum state which would require local enforcement such as a potential building code violation that would require a decision from local authorities. Reply, P. 7. Defendants offer the more reasonable interpretation of the disputed language.

In essence, the Plaintiffs want this Court to incorporate language into the License Agreement that was not present in the original. That is a step this Court is not willing to take. First, the word 'contractual' never appears in this provision. Second, taking such a drastic step would render the

6

forum selection clause pointless. In every business relationship there will be certain matters arising within the purview of local agencies. The parties' agreement recognizes as much and seeks to carve out an appropriate exception for localized issues that may or may not be identifiable in advance and, therefore, are not susceptible to being addressed with any specificity in the license agreement. In addition, the agreement prefers Wisconsin both as a forum and as the source of controlling substantive law, tending to show that a more narrow construction of the ambiguous language is the construction most consistent with what appears to be the parties' intent.[3] Moreover, Defendants' interpretation supplies a complete meaning to the forum selection clause, and would not render this clause useless. Under Walker, this Court finds that Defendants' interpretation of the disputed language in the License Agreement is more reasonable than that provided by the Plaintiffs.

Furthermore, the Plaintiffs admit their claims stem from the License Agreement and the parties' respective obligations under the agreement. *See* Response, P. 6 ("Plaintiffs' Complaint centers around the contractual relationship between themselves and the Defendants."); *see also* Amended Complaint, ¶ 25 ("That Defendants repudiated the Agreement by expressing a positive, distinct, unequivocal and absolute refusal to complete performance under the Agreement, by conveying their intention to revoke Plaintiffs' right to use the Marks in conducting business."). The fact the Plaintiffs acknowledge their claims fall within the scope of the License Agreement demonstrates both their knowledge and understanding of the License Agreement's conditions.

---

[3] The License Agreement explicitly provides that "any action brought by either party in any court...shall be brought within the Trempealeau County State of Wisconsin and do hereby waive all questions of...venue for the purposes of carrying out this provision." License Agreement, ¶ 28, §B. Moreover, "the parties agree that arbitration shall be the *exclusive* means of resolving any controversy, dispute, or question arising out of, in connection with, or in relation to this Agreement or its interpretation, application, enforcement, performance, or non-performance, or any breach hereof ..." and that said "arbitration proceedings shall be conducted in Trempealeau, Wisconsin . . . ." License Agreement, ¶ 29, § A (emphasis added).

Included within those terms is the forum selection clause designating Trempealeau County, WI, as the venue in which to resolve conflicts.

### C.     Enforcement of the Forum Selection Clause

Having found the Defendants' proposed construction of the ambiguous language in the License Agreement is the more reasonable interpretation, the issue now is to determine whether the forum selection clause is enforceable. Generally, a forum selection clause is presumed legitimate and enforceable unless the opponent of implementation shows the clause to be "'unreasonable' under the circumstances." The Bremen et al. v. Zapata Off- Shore Co., 407 U.S. 1, 9-10 (1972). A forum selection clause may be unreasonable "if (1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." Allen, 94 F.3d at 928.

Here, the Plaintiffs assert that the License Agreement's provision to have disputes settled in Trempealeau County, WI by arbitration is unreasonable because it would contravene a strong public policy of North Carolina. Plaintiffs also argue such a location would create a grave inconvenience for the Plaintiffs. Plaintiffs contend that N.C. Gen. Stat. §22B-3, and the Court's holding in Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 (1988), illustrate that North Carolina's public policy supports their case being heard in the Western District of North Carolina. Plaintiffs' public policy argument does not carry the day.

First, on facts similar to the present case, federal and state courts have held that § 22B-3 is subordinate to the FAA when the two conflict. *See* Aspen Spa Prop., LLC v. Int'l Design Concepts,

8

527 F.Supp.2d 469, 473 (E.D.N.C. 2007) ("there are no state-law grounds for revoking the forum selection clause, and the FAA requires the court to enforce the forum selection clause."); *see also* James C. Greene Co. v. Great Am. E&S, Inc., 321 F.Supp.2d 717, 721 (E.D.N.C. 2004); *see also* Goldstein v. Am. Steel Span, Inc., 181 N.C. App. 534, 538, 640 S.E.2d 740, 743 (2007) ("Furthermore, the FAA preempts North Carolina's statute and public policy regarding forum selection..."). The disputed forum-selection clause arises from the arbitration clauses in the License Agreement, and thus, is governed by the FAA. The three cases cited above illustrate the proposition that the FAA trumps state public policy when dealing with forum-selection clauses in an arbitration agreement, and therefore, Plaintiffs' argument fails here.

Second, Plaintiffs' reliance on Stewart is misguided. Stewart held that federal law governs forum-selection clauses, and that a state public policy contravening such a clause is but one component in a multi-factor analysis. Stewart, 487 U.S. at 32. In fact, Plaintiffs do not offer an explanation on how Stewart supports their view that North Carolina's public policy would have their suit remain in this district. Rather, the Plaintiffs present a conclusory argument to support their claims, and such an explanation is insufficient to persuade this Court to find that North Carolina's public policy requires, or even suggests that Plaintiffs' claims should remain in this district.

The Plaintiffs further submit that to "conduct the arbitration in the selected forum of Trempealeau, Wisconsin, would be gravely inconvenient and unfair to the Plaintiffs." Reply, P. 9. Plaintiffs rely upon three of the eleven frequently cited "inconvenience" factors from Cable-La, Inc. v. Williams Commc'n., Inc., 104 F.Supp.2d 569,577 (M.D.N.C. 1999).[4] Though the Plaintiffs claim

---

[4] Plaintiffs concede that factors 1, 4-9, & 11 do not weigh for or against inconvenience to either party. Response, P. 9. The Court also notes that these factors mirror those listed in Section "III, A."

9

"the majority of these factors favor keeping the instant case in North Carolina," it appears the Plaintiffs are mistaken as to both their mathematics and their rationale.

First, factors two and three from Cable-La pertain to the feasibility of having witnesses attend a proceeding, and to have "compulsory process for attendance of unwilling witnesses." Id. In their Response and Mr. William L. Hutson's supporting affidavit, the Plaintiffs set forth numerous facts supporting their main contention that "it would be extremely expensive" to travel to Wisconsin because most of their "witnesses are located in North Carolina." Response, P. 10. The Plaintiffs assert that since 2000 - when the License Agreement was signed - the only contacts with the Defendants' representatives occurred at Plaintiffs' store in Hickory, NC, at two annual meetings at the Furniture Market in High Point, NC, and now at the new Furniture Market in Las Vegas, NV. Id. Furthermore, the Plaintiffs contend that the sheer breadth of the Defendants' business would make it easier upon the Defendants who have greater financial resources to adjudicate this matter in a distant jurisdiction. Id. The Plaintiffs also maintain that their witnesses including Mr. Hutson, a named Plaintiff in this action, and customers of the Plaintiffs' store would not be able to attend proceedings in Wisconsin nor could they be compelled to do so by subpoena, which would effectively "deprive Plaintiffs of their day in court." Id.

The fact is, however, that Mr. Hutson filed this action fully aware that he signed the License Agreement specifying Trempealeau County, WI, as the sole location for the hearing of any grievances covered by the License Agreement. Also, the Plaintiffs fail to name or reference any customers who filed complaints with the store about their purchases, or any hardships they may face in traveling to Wisconsin. At this juncture, this Court will not presume such unnamed customers would be unable to present themselves in Wisconsin. Furthermore, as Defendants correctly point out, Plaintiffs have

other mechanisms at their disposal to elicit testimony that could aid the eventual fact finder in reaching a decision. *See* Reply, P. 14. For instance, Plaintiffs could provide affidavits like the one attached to their Response, or depose witnesses locally who otherwise would be unwilling or unable to travel to Wisconsin. The Court does not dispute that the Western District of North Carolina would most likely be a more financially viable venue for the Plaintiffs, and that deference is generally given to the plaintiff's forum selection. Even so, Plaintiffs actually signed the License Agreement, which calls for all claims arising from that agreement to be heard in Wisconsin. To subject the Defendants to venue in this Court would run afoul of the independence given parties negotiating terms in a contract. "In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our justice system." AC Controls Co., Inc. v. Pomeroy Comp. Res., Inc., 284 F.Supp.2d 357, 363 (W.D.N.C. 2003). This Court finds the Plaintiffs have not produced sufficient evidence signifying they would be severely inconvenienced by subjecting their potential witnesses to a proceeding in Wisconsin.

Factor ten considers the convenience of having a forum state applying the law of that state in diversity actions. Cable-La, 104 F.Supp.2d at 577. To the extent that this factor comes into play by virtue of the License Agreement's language said to be ambiguous, this argument favors Plaintiffs' position. However, taking the language of the agreement quoted at length in Section "III, B" above as a whole, it appears the contracting parties contemplated and took into account the fact that the arbitrator could be called upon to apply certain laws of the state in which the licensed business is located. This factor does not have sufficient weight to tip the balance in the exercise of the Court's discretion in favor of the Plaintiffs. Thus, the Defendants' motion to transfer this cause of action to

the Western District of Wisconsin will be <u>granted</u>, subject to that court's acceptance of it.

### V. Order

**IT IS THEREFORE ORDERED THAT:**

1) Defendants' Motion to Dismiss for improper venue is **DENIED;**

2) Defendants' Motion to Transfer Venue is hereby **GRANTED;** and

3) The Clerk of Court is directed to **TRANSFER** the instant case to the Western District of Wisconsin for further proceedings.[5]

Signed: August 7, 2008

Richard L. Voorhees
United States District Judge

---

[5] The Court opts not to address Defendants' motion to stay and compel arbitration in light of the transfer of venue.